UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Civ Case No.: 20-cv-6368
GUILLERMINA DESPIAU,

    *Plaintiff*,

- against -

GOODWILL INDUSTRIES OF GREATER NEW YORK
AND NORTHERN NEW JERSEY, INC.*,*

    *Defendant*.
------------------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, GUILLERMINA DESPIAU, (hereinafter "Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff GUILLERMINA DESPIAU complains pursuant to the **Family and Medical Leave Act**, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL"), and seeks damages to redress the injuries Plaintiff suffered as a result of being **discriminated** against on the basis of her **disabilities and/or perceived disabilities** and **terminated** by her employer in **retaliation** for taking a legally protected leave of absence.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 29 U.S.C. § 2601 and 28 U.S.C. §§1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state laws pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within this judicial district.

## PARTIES

5. Plaintiff is a resident of the State of New York, Orange County.

6. At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by the federal, state and city laws invoked herein.

7. At relevant all times, Plaintiff was employed as a Field Operations Manager by GOODWILL INDUSTRIES OF GREATER NEW YORK AND NORTHERN NEW JERSEY, INC., in their Astoria store located at 4-21 27th Avenue, Astoria, New York 11102.

8. Defendant GOODWILL INDUSTRIES OF GREATER NEW YORK AND NORTHERN NEW JERSEY, INC. (hereinafter, "Defendant" or "Goodwill Industries) is a domestic not-for-profit corporation.

9. Defendant's office headquarters is located at 4-21 27th Avenue, Astoria, New York 11102.

10. Defendant is an "employer" under the relevant statutes and employs more than 50 employees.

11. At all relevant times, Plaintiff was an employee of Defendant.

## MATERIAL FACTS

12. In or around October 2001, Plaintiff began working for Defendant. Plaintiff's yearly salary in 2019 was approximately $100,000.

13. Plaintiff was a well-performing employee and was qualified to perform the duties of her employment.

14. Indeed, during her employment, Plaintiff received several raises and promotions where Plaintiff's most recent position was a Field Operations Manager with Defendant.

15. On January 10, 2020, Plaintiff suffered an injury that resulted in a fractured ankle.

16. On January 13, 2020, Defendant became aware of Plaintiff's fractured ankle when Plaintiff informed her supervisor, Sam, and Defendant's Human Resources ("HR") department employee, Christina Luback ("Luback").

17. Plaintiff informed Sam and Luback that her injury would require surgery and that she would need to take three to four months off from work to recover from that surgery.

18. On January 17, 2020, on the advice of Sam, HR sent Plaintiff the paperwork she needed to complete and submit for her medical leave.

19. Shortly thereafter, Plaintiff submitted paperwork for medical leave, including Family and Medical Leave Act (FMLA) leave.

20. Plaintiff's surgery took place on January 21, 2020.

21. After Plaintiff's surgery, Plaintiff's physician sent an email to Defendant's HR department to update Defendant on Plaintiff's medical condition and also faxed medical forms to Defendant.

22. On January 30, 2020, Plaintiff received a telephone call from Executive Vice President of Sales, Lennox, informing her that she would be laid off along with her team and would have to reapply for a job with Defendant.

23. Upon information and belief, all employees who worked on Plaintiff's team while she was employed with Defendant were rehired for positions with pay and responsibilities similar to their previous positions. Plaintiff was not offered a similar comparable position.

24. On February 7, 2020, Plaintiff received a severance package from Defendant.

25. During a call later that day, Lennox and Sam told Plaintiff that her medical benefits would expire the end of February and that she would receive a severance package. Plaintiff was also told HR would be reaching in the next several days to further discuss the severance package in detail.

26. On February 1, 2020, Plaintiff's work email account was deactivated.

27. On February 7, 2020, Plaintiff received a text notification from ADP that direct deposit was deactivated. Plaintiff contacted Defendant's payroll department regarding the issue, and they confirmed it was deactivated.

28. There was internal chatter between payroll and HR regarding Plaintiffs direct deposit and how it should not have been deactivated because Plaintiff was on medical leave.

29. When Plaintiff questioned the reasons, HR responded it was a mistake. Later that day, the direct deposit was reactivated.

30. Plaintiff believed this incident took place in retaliation for going out on FMLA and medical leave.

31. On February 12, 2020, Plaintiff inquired about reapplying for a position with Defendant. However, HR directed her to Defendant's website. When Plaintiff consulted Defendant's website, it listed only entry-level positions for which Plaintiff was grossly overqualified and none that was comparable to her previous position with Defendant as a Field Operations Manager.

32. On February 19, 2020, Plaintiff's treating physician informed her that Luback had confirmed receipt of Plaintiff's short-term disability form and that she would forward it to the insurer, Guardian so Plaintiff may receive benefits until her employment terminates.

33. Plaintiff's engagement in protected activity put Defendant on notice that she was requesting a reasonable accommodation for a fractured ankle.

34. However, Defendant failed to make any reasonable accommodation for Plaintiff or offer Plaintiff any information regarding her eligibility for any leave, including under the FMLA.

35. Plaintiff understood that an offer of a severance agreement was in retaliation for requesting an accommodation and taking medical leave to recover from her fractured ankle.

36. Contrary to the law, Defendant failed/refused to engage in any interactive process with Plaintiff. Defendant also failed to provide any reasonable accommodation or engage in the interactive process to determine whether a reasonable accommodation could be suggested to Plaintiff.

37. Instead, Defendant terminated Plaintiff's employment having knowledge that Plaintiff suffered a fractured ankle.

38. Defendant does not have a justifiable nor reasonable excuse in terminating Plaintiff's employment.

39. Defendant terminating Plaintiff's employment was pretextual.

40. But for Plaintiff's disability, i.e. fractured ankle, Defendant would not have terminated Plaintiff.

41. Plaintiff had, and/or Defendant perceived that she had, a physical impairment that substantially limits one or more of her major life activities.

42. Upon information and belief, Defendant is aware of its obligations under the NYSHRL, and the NYCHRL.

43. Defendant are aware of their legal duty and obligation to engage in an interactive process and to assess an employee's need for accommodations when the employee places

Defendant on notice of a medical need/disability, which prevents the employee from continuing to work.

44. As a result of Defendant's action, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

45. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

46. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

47. As such, Plaintiff demands punitive damages against Defendant.

## AS A FIRST CAUSE OF ACTION
## FOR RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

48. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

49. Section 2612(d)(2)(B) of the FMLA, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

50. Section 2615(a) of the Family Medical Leave Act, states in pertinent part:

> Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to

6

> discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

51. Defendant violated these sections as set forth herein.

52. Upon information and belief, Defendant could have allowed Plaintiff to properly exercise her FMLA leave.

53. Instead, Defendant interfered with Plaintiff's FMLA rights by unduly and prematurely terminating Plaintiff's employment while Plaintiff was on FMLA.

54. Defendant had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

55. As a result of Defendant's actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

56. As a result of the acts and conduct complained of herein, Plaintiff suffered, and continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety, adverse employment action, loss of income, the loss of a salary, special damages, loss of employment, loss of benefits, and loss of other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

57. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

58. Plaintiff is entitled to the maximum damages allowable under this law.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE LAW

59. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

61. Plaintiff engaged in protected activity on February 23, 2019, by Defendant becoming aware of Plaintiff's fractured left ankle and thereafter was hospitalized.

62. This protected activity should put Defendant on notice that reasonable accommodation should be made for Plaintiff.

63. However, Defendant did not make any reasonable accommodation for Plaintiff.

64. Defendant engaged in an unlawful discriminatory practice by terminating Plaintiff because of her fractured ankle, which qualifies as a disability within the meaning of the NYSHRL.

## AS A THIRD CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK STATE LAW

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

67. But for Plaintiff's disability, perceived disability and/or need for an accommodation for medical purposes, Defendant would not have terminated her employment.

68. Defendant violated the section cited herein as set forth.

8

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY LAW

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

71. Plaintiff engaged in protected activity on January 13, 2020 by informing Defendant about Plaintiff's fractured ankle and need for surgery.

72. This protected activity should have put Defendant on notice that a reasonable accommodation should be made for Plaintiff.

73. However, Defendant did not make any reasonable accommodation for Plaintiff.

74. Defendant engaged in an unlawful discriminatory practice by terminating Plaintiff because of her fractured ankle, which qualifies as a disability within the meaning of the NYCHRL.

## AS A FIFTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY LAW

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

77. But for Plaintiff's disability, perceived disability and/or need for an accommodation for medical purposes, Defendant would not have terminated her employment.

78. Defendant violated the section cited herein as set forth.

## JURY DEMAND

79. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the **Family and Medical Leave Act**, 29 U.S.C. § 2601, et seq. ("FMLA"), the **New York State Human Rights Law**, New York State Executive Law, § 296 ("NYSHRL"), and the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq*. ("NYCHRL") in that Defendant discriminated and retaliated against Plaintiff on the basis of her disability (fractured ankle);

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff liquidated damages on her FMLA claim;

D. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law and City-law claims;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

H.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
December 30, 2020

                                      **PHILLIPS & ASSOCIATES,**
                                      **ATTORNEYS AT LAW, PLLC**

**By:**    /**s**/ Marjorie Mesidor
         Marjorie Mesidor, *Esq.*
         Joshua Friedman, Esq.
         **Phillips & Associates, PLLC**
         *Attorneys for Plaintiff*
         585 Stewart Avenue, Suite 410
         Garden City, New York 11530
         T: (212) 248-7431
         F: (212) 901-2107
         mmesidor@tpglaws.com
         jfriedman@tpglaws.com